**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| A.P., a minor, by and through her guardian, CARLOS PENA, and CARLOS PENA, each individually and on behalf of similarly situated individuals, | )<br>)<br>)<br>)<br>) No. 1:23-cv-02667 |
| *Plaintiffs*, | ) Hon. Nancy L. Maldonado |
| v. | ) Magistrate Judge M. David<br>) Weisman |
| CERENCE INC., a Delaware corporation, | )<br>) |
| *Defendant.* | ) |

**FIRST AMENDED CLASS ACTION COMPLAINT**[1]

Plaintiffs, A.P., a minor, by and through her guardian, Carlos Pena, and Carlos Pena, each individually and on behalf of other similarly situated individuals, bring this First Amended Class Action Complaint against Defendant, Cerence Inc. ("Cerence"), to stop Defendant from violating the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* and to seek redress for those aggrieved by Defendant's unlawful conduct. Plaintiffs allege as follows based on personal knowledge as to their own acts and experiences, and as to all other matters, on information and belief, including an investigation by their attorneys.

**NATURE OF THE ACTION**

1. Defendant Cerence is a multinational software and technology company that provides voice assistant and facial recognition technology for automobiles. Defendant's

---

[1] This First Amended Class Action Complaint is being filed in response to the Court's June 1, 2023 Order (Dkt. 16) severing and remanding Counts I and III of Plaintiffs' original Class Action Complaint (Dkt. 4-1). The claims pled under those counts will be realleged in an amended pleading filed in state court. Plaintiffs do not waive or forfeit, and hereby expressly preserve, all rights with respect to those claims.

1

technology uses speech recognition and facial recognition to deliver custom responses to drivers and passengers, and to perform personalized tasks related to navigation, entertainment, and climate control.

2. Defendant's products are integrated into more than 450 million automobiles' in-car systems, including automobiles manufactured and sold to consumers by Volkswagen, Mercedes-Benz, Toyota, Honda, Subaru, and many others.

3. In order to process users' voice commands, and perform tasks specific to a given speaker, Defendant's software captures, stores, and processes users' voiceprints—the unique characteristics of their voice—for identification and verification purposes. With a voiceprint, Defendant's software can carry out personalized responses including playing certain music, adjusting seats and climate settings, and completing online purchases.

4. Voice and facial recognition technology—which utilize individuals' biologically unique voiceprints and facial geometry, respectively—are subject to the Illinois Biometric Information Privacy Act, or BIPA. BIPA protects individuals' biometric privacy rights by regulating private entities' collection and use of biometrics. For instance, BIPA prohibits a private entity from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric data or biometric information (collectively, "biometrics") unless it: (1) informs that person in writing that biometric identifiers and information will be collected and/or stored, (2) informs the person in writing of the specific purpose and length for which the biometric identifiers or information are being collected, stored, or used, (3) receives a written release from the subject, and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said biometrics. *See generally* 740 ILCS 14/15(a), (b).

5. When Defendant provided its biometric-enabled technology for integration with

automobiles sold and driven in Illinois, its actions triggered a number of statutory requirements under BIPA. However, Defendant has failed to meet its legal obligations under BIPA. For instance, Defendant never publicly published a retention policy and destruction guidelines for Plaintiffs' and the other putative class members' biometrics; it never provided the required disclosures about the specific purpose and length of time for which Plaintiffs' or the other putative class members' biometrics would be stored or used; and Defendant never sought a signed, written release from Plaintiffs or the other putative class members prior to obtaining their biometrics.

6. Accordingly, Plaintiffs bring this action for statutory damages and other available relief as a result of Defendant's unlawful conduct and its violations of Plaintiffs' biometric privacy rights under BIPA. Individually and on behalf of a proposed class defined below, Plaintiffs seek declaratory and injunctive relief as well as an award of statutory damages, litigation costs, reasonable attorneys' fees, and prejudgment interest.

## **PARTIES**

7. At all relevant times, Plaintiff A.P. and her guardian, Plaintiff Carlos Pena, have both been residents of Illinois.

8. Defendant Cerence Inc. is a for-profit corporation organized under the laws of Delaware and headquartered in Burlington, Massachusetts.

## **JURISDICTION AND VENUE**

9. Defendant removed this case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, asserting that: the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection § 1332(d) apply.

10. This Court has personal jurisdiction over Defendant with respect to Plaintiffs' and the putative class members' claims, because Defendant knowingly and intentionally transacts business within Illinois such that it has sufficient minimum contacts with Illinois and has purposely availed itself of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because Plaintiffs' and the putative class members' claims arise out of or relate to Defendant's unlawful in-state conduct, as Defendant's violations of BIPA occurred within this Illinois.

11. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District under § 1391(c)(2), and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## ALLEGATIONS OF FACT COMMON TO ALL COUNTS

**The Biometric Information Privacy Act**

12. "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

13. BIPA was enacted in 2008 in order to safeguard individuals' biometrics as a result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276.

14. As set forth in BIPA, biologically unique identifiers, such as a person's unique fingerprints, voiceprint, or facial geometry, implicate special concerns because they cannot be changed:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at

4

> heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS 14/5(c).

15. As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA, "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id*.

16. Due to the critical need for enhanced protection of biometrics, BIPA imposes various requirements on private entities with respect to individuals' biometrics.

17. Among other things, BIPA regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of biometrics: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)–(e).

18. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, palm scans and facial geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

19. "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric

identifiers and biometric information are known as "biometrics."

20. In Section 15 of BIPA, there is a list of at least four distinct categories of activities that may subject private entities to liability:

    a. possessing biometrics without making publicly available a written biometric retention and destruction policy, 740 ILCS 14/15(a);

    b. collecting biometrics without informed written consent, 740 ILCS 14/15(b);

    c. profiting from biometrics, 740 ILCS 14/15(c); and

    d. disclosing or disseminating biometrics without consent, 740 ILCS 14/15(d).

21. Compliance with BIPA is straightforward for those who wish to use biometric technology, and generally may be accomplished through a single, signed sheet of paper.

**Defendant's Use of Biometric-Enabled Technology**

22. Defendant Cerence Inc. is a multinational technology company and a provider of AI voice assistant and voice recognition technology for automobiles. Specifically, Defendant is the provider of the Cerence Drive platform, which it sells to its automotive manufacturer customers for integration in automobiles sold to consumers.

23. Automobiles integrated with Cerence Drive typically incorporate a host of Cerence software and other technology, including a biometrically enabled voice assistant, microphones placed throughout the vehicle's interior, and speech recognition software installed on the vehicle's operating system.

24. Cerence Drive's speech recognition technology is capable of not only receiving, understanding, and carrying out voice commands, but also identifying the person who made a

6

particular voice command and where they are, so that the system can tailor its responses or actions to that specific person. In other words, Cerence Drive's technology can determine the identity of a person delivering commands and also where he or she is seated in the cabin.

25. Cerence Drive performs the capabilities mentioned above by collecting, processing, analyzing, and storing users' voiceprint biometrics. On Defendant's website, a screenshot of which is depicted in Figure 1 below, Defendant provides a description of its use of voice biometrics.[2]



**Figure 1.**

26. As stated on Cerence's website, Cerence uses "voice biometrics – the identification and verification of a user based on the characteristics of their voice" to "deliver advanced levels of personalization" and "enable the automotive assistant to understand who is speaking, load their personal profile, authorize purchases by voice, and more."

27. Thus, Cerence collects, captures, and stores the unique voiceprint biometrics of every individual who interacts with Cerence's voice assistant technology. And once Cerence obtains users' biometric identifiers, biometric information, and/or data derived therefrom, Cerence's software sends that data and information to its own servers for purposes of helping Cerence determine whether a user has made a voice command and what the user is asking the

---

[2] https://www.cerence.com/cerence-products/beyond-voice (last accessed 3/24/23).

7

voice assistant to do. Cerence also collects and stores biometric information and other data derived from biometrics to create usage statistics and improve its services.[3]

28. Importantly, Cerence Drive not only collects the voiceprints of individuals who may make commands; it also collects the voiceprints of everyone in the vehicle who speaks. Cerence Drive uses "Speech Signal Enhancement," or SSE, to detect and isolate certain voices and filter out others, so that Cerence Drive's voice assistant can determine who may be making a voice command, and who else in the automobile should be muted or ignored. SSE is a core functionality of Cerence Drive.

29. Figure 2, below, shows a screenshot from Cerence's 2020 Technology Showcase where Udo Haiber, Vice President of Research and Development at Cerence, explained how Cerence's SSE can identify and isolate the voice of a speaker through its Deep Neutral Network (DNN) Noise Cancelation System.



**Figure 2.**

---

[3] https://cerence.com/news-releases/news-release-details/volkswagen-selects-cerence-power-voice-control-new-fully/#:~:text=Cerence%20provided%20core%20embedded%20and,in%20the%20car%20is%20talking (last accessed 3/24/23)

30. Notably, the slide depicted in Figure 2 contains spectrograms of voices with other noise. A spectrogram is a visual graph used to display frequencies of sound waves. For illustrative purposes, Figure 3 below depicts an example of a spectrogram of a human voice.



**Figure 3.**

31. A spectrogram of a human voice, like the kinds depicted in Figures 2 and 3, is derived from biometric information and biometric data, and can be used to identify an individual by the sound of his or her voice.

32. The spectrograms in Figure 2, which depict voices detected and analyzed by Cerence Drive, further demonstrate how Cerence Drive collects and uses voiceprints and/or other biometric information.[4]

33. Moreover, Defendant's voice assistant technology not only collects biometrics from its clients' users, but also stores said biometrics on Cerence's own servers, which it then disseminates to third-party vendors.

34. Cerence Drive interfaces with and has access to many external content services that it utilizes to respond to voice commands. For example, Cerence Drive can use voice commands to log into third-party services to find destinations, provide navigation routes, make purchases, and play music.

---

[4] https://www.youtube.com/watch?v=uBcZ1aoL16s at 46:00 – 48:00 (last accessed 3/24/2023)

35. Although Cerence's voice recognition technology is a core part of the AI voice assistant systems present in many automobiles, Cerence does not clearly inform or notify drivers and passengers that it is collecting, storing, and disseminating their voiceprint biometrics. Additionally, Cerence fails to obtain written consent from end users to collect, possess, store, use or disseminate their voiceprint biometrics.

36. By selling and licensing its AI voice assistant hardware, software, and services to automotive manufacturers, Cerence directly profits from users' biometrics. The collection, storage, and dissemination of users' biometrics is core to the functionality of Cerence Drive, so Cerence's business is reliant on the collection of voiceprint biometrics from end users.

**Facts Specific to Plaintiffs**

37. Since 2019, Defendant's Cerence Drive voice assistant technology and SSE capability have been integrated into the operating systems of numerous consumer automobiles, including those manufactured and sold by Volkswagen. Specifically, Cerence Drive voice recognition technology powers the voice assistants found in Volkswagen's ID.3, ID.4, and Golf 8 GTI vehicle models.

38. Over time, Cerence Drive voice assistant technology has expanded beyond the Volkswagen ID.3 and ID.4 models to other Volkswagen models capable of hosting a voice assistant.[5]

39. On multiple occasions throughout 2021, while within the state of Illinois, Plaintiffs A.P. and Carlos Pena carpooled to locations in Cook County, Illinois in a relative's Volkswagen ID.4.

---

[5] https://sustainserv.com/wp-content/uploads/2021/11/Cerence-ESG-Report-2021.pdf at page 16 (Last Accessed 3/23/23); https://archive.autofutures.tv/2022/03/02/vw-selects-cerenc/ (Last Accessed 3/23/23); https://www.volkswagen-newsroom.com/en/stories/hello-id-light-how-the-new-id-models-communicate-with-the-vehicle-occupants-via-a-light-strip-6963 (Last Accessed 3/23/23).

40. During the carpool trips mentioned above, Plaintiffs both verbally activated the automobile's AI voice assistant by saying "Hello ID" to perform tasks like playing music, changing the temperature, and asking for directions. Each time that Plaintiffs verbally activated the voice assistant of the ID.4 by saying "Hello ID," Cerence identified each Plaintiff by their voiceprint and directed the ID.4 to display a blinking white light in front of the person speaking to notify them that the voice assistant was listening to them in particular.

41. Unbeknownst to Plaintiffs, however, each time the automobile's voice assistant was activated, Defendant's Cerence Drive-powered voice recognition technology and SSE functionality collected their voiceprints for identification purposes.

42. Moreover, on each occurrence where Plaintiffs activated the voice assistant integrated into the Volkswagen ID.4, Cerence collected, processed, obtained, and stored Plaintiffs' biometrics without first providing proper notice or obtaining adequate consent.

43. On information and belief, Cerence Drive also collects and stores location data and other personally identifiable information when users engage with its platform. Accordingly, Defendant knows that its technology will and has interacted with individuals located in the state of Illinois, such as Plaintiffs, without regard for compliance with BIPA's requirements.

44. Despite collecting, capturing, and obtaining Plaintiffs' voiceprint biometrics, Defendant failed to obtain valid written consent as required by BIPA to collect such biometric identifiers. Defendant also failed to provide Plaintiffs with written disclosures informing them of the specific purpose and length of term for which their biometrics were being collected.

45. Defendant has also unlawfully profited from the voiceprint biometrics that it obtained from Plaintiffs and other individuals in Illinois. Defendant charges its automobile manufacturer customers for its Cerence Drive voice assistant technology services, such that

11

collection of Plaintiffs' and other Illinois individuals' biometric information is an essential feature of Defendant's business.

46. Further, on information and belief, Defendant unlawfully disclosed Plaintiffs' and other Class members' biometrics to its third-party cloud and data storage vendors without Plaintiffs' informed consent.

## CLASS ALLEGATIONS

47. Plaintiffs bring this action individually and, pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as representatives on behalf of a Class defined as follows:

> **Class**: All persons whose voiceprint biometric identifiers or biometric information were collected, captured, stored, disseminated, transmitted or otherwise used by Cerence Inc. through the Cerence Drive platform within the state of Illinois any time within the applicable limitations period.

48. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officers, directors, or employees of Defendant; and any immediate family members of such officers, directors, or employees.

49. On information and belief, there are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiffs, the members can be easily identified through Defendant's records and Defendant's customers' records.

50. Plaintiffs' claims are typical of the claims of the Class members they seek to represent, because the basis of Defendant's liability to Plaintiffs and the Class members is substantially the same, and because Defendant's conduct has resulted in similar harms to Plaintiffs and to the Class. As alleged herein, Plaintiffs and the Class have all been aggrieved as a result of Defendant's BIPA violations.

51. There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    a. Whether Defendant's Cerence Drive voice assistant and speech recognition technology collects, captures, or otherwise obtains biometric identifiers or biometric information from Illinois users;

    b. Whether Defendant's conduct is subject to BIPA;

    c. Whether Defendant made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometrics;

    d. Whether Defendant obtained a written release from the Class before capturing, collecting, or otherwise obtaining their biometrics;

    e. Whether Defendant provided a written disclosure that explains the specific purposes, and the length of time, for which biometrics were being collected, stored and used, before taking such biometrics;

    f. Whether Defendant disseminated or disclosed the Class members' biometrics to third parties without the subjects' consent;

    g. Whether Defendant's profiting from the collection of Class members' biometrics violates BIPA;

    h. Whether Defendant's conduct violates BIPA;

      i.      Whether Defendant's violations of the BIPA are willful or reckless; and

      j.      Whether Plaintiffs and the Class are entitled to damages and injunctive relief.

52. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

53. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

54. Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## **COUNT I**
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)**
**(On behalf of Plaintiffs and the Class)**

55. Plaintiffs incorporate the foregoing allegations by reference as though fully set forth herein.

56. Defendant is a private entity subject to BIPA. 740 ILCS 14/10.

57. As discussed above, Plaintiffs and the other Class members have had their "biometric identifiers," namely their voiceprints and/or data derived therefrom, *i.e.*, "biometric information," collected, captured, and obtained by Defendant when they interacted with Defendant's Cerence Drive voice assistant system.

58. BIPA requires any private entity, such as Defendant, to obtain informed written consent from individuals before collecting or obtaining their biometric identifiers or biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

59. In each instance when Plaintiffs and the other Class members used their voice to interact with Defendant's Cerence Drive voice assistant system, Defendant captured, collected, or otherwise obtained Plaintiffs' and the other Class members' biometrics without their written consent and without complying with BIPA.

60. Defendant's practices with respect to capturing, collecting, storing, and using the biometrics of Plaintiffs and the Class members fails to comply with the following requirements of Section 15(b):

    a. Defendant failed to inform Plaintiffs and the members of the Class in writing that their biometrics were being collected and stored, prior to such

15

    collection or storage, as required by 740 ILCS 14/15(b)(1);

 b. Defendant failed to inform Plaintiffs and the Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

 c. Defendant failed to inform Plaintiffs and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2); and

 d. Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3).

61. As a result, Defendant has violated Section 15(b) of BIPA.

62. Defendant knew, or was reckless in not knowing, that integrating biometric-enabled voice assistant technology in automobiles sold and driven in Illinois and obtaining numerous Illinois residents' biometrics would be subject to Section 15(b) of BIPA, a statutory provision that was enacted in 2008.

63. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

64. Defendant's violations of Section 15(b) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(b) of BIPA.

65. Accordingly, with respect to Count I, Plaintiffs, individually and on behalf of the proposed Class, pray for the relief set forth below.

## COUNT II
### Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(d)
### (On behalf of Plaintiffs and the Class)

66. Plaintiffs incorporate the foregoing allegations by reference as though fully set forth herein.

67. Defendant is a private entity subject to BIPA. 740 ILCS 14/10.

68. As discussed above, Defendant came into possession of Plaintiffs' and the other Class members' biometrics after they interacted with Defendant's Cerence Drive biometrically enable voice assistant technology.

69. Section 15(d) of BIPA prohibits any private entity in possession of biometrics, such as Defendant, from disclosing, redisclosing, or otherwise disseminating an individual's biometric identifiers or biometric information without that individual's consent. 740 ILCS 14/15(d).

70. On information and belief, Defendant has disclosed or otherwise disseminated the biometrics of Plaintiffs and the Class members to third party companies. Specifically, Defendant's Cerence Drive platform utilizes user voice commands when connecting with and interfacing with third-party services such as cloud storage, external content services, and third-party assistants.

71. Defendant never obtained Plaintiffs' or other Class members' consent to disclose or disseminate their biometrics.

72. Accordingly, Defendant has violated Section 15(d) of BIPA.

73. Defendant knew, or was reckless in not knowing, that by utilizing a biometric-enabled voice recognition system that disclosed or disseminated the biometrics of numerous Illinois residents as alleged above, it would be subject to Section 15(d) of BIPA, a statutory provision enacted in 2008.

74. BIPA provides for statutory damages of $5,000 for each willful and/or reckless

violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

75. Defendant's violations of Section 15(d) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(d) of BIPA.

76. Accordingly, with respect to Count II, Plaintiffs, individually and on behalf of the proposed Class, pray for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, respectfully request that this Court enter an Order:

    a. Certifying the Class as defined above, appointing Plaintiffs as class representatives, and appointing the undersigned as class counsel;

    b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

    c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA;

    d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

    e. Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

    f. Awarding reasonable attorneys' fees, costs, and other reimbursable litigation expenses pursuant to 740 ILCS 14/20(3);

18

      g.      Awarding pre- and post-judgment interest, as allowable by law; and

      h.      Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: June 8, 2023                           Respectfully Submitted,

                                          A.P., a minor, by and through her guardian, CARLOS PENA, and CARLOS PENA, each individually and on behalf of similarly situated individuals

                                          By: /s/ *Paul T. Geske*
                                          One of Plaintiffs' Attorneys

                                          Myles McGuire
                                          Paul T. Geske
                                          Colin Primo Buscarini
                                          MCGUIRE LAW, P.C. (Firm ID#56618)
                                          55 W. Wacker Drive, 9th Fl.
                                          Chicago, IL 60601
                                          Tel: (312) 893-7002
                                          Fax: (312) 275-7895
                                          mmcguire@mcgpc.com
                                          pgeske@mcgpc.com
                                          cbuscarini@mcgpc.com

                                          *Attorneys for Plaintiffs and the putative Class*

**CERTIFICATE OF SERVICE**

      I, the undersigned, certify that on June 8, 2023 I filed the foregoing *First Amended Class Action Complaint* with the Clerk of Court using the Court's CM/ECF system, which will cause a copy of said document to be electronically transmitted to all counsel of record.

      By: /s/ *Paul T. Geske*
           Paul T. Geske