THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDOLPH FRESHOUR and VINCENZO ALLAN, each individually and on behalf of similarly situated individuals, | ) ) ) ) | No. 23 C 2667 |
| | ) ) | Chief Judge Virginia M. Kendall |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| CERENCE INC., | ) ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Randolph Freshour and Vincenzo Allan bring this proposed class action lawsuit against Defendant Cerence Inc. ("Cerence") under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq* ("BIPA"). After Cerence removed the case, two of the claims were remanded to state court. Plaintiffs now move for a stay under the *Colorado River* doctrine pending the outcome of the state court proceedings. For the foregoing reasons, the Court grants the Motion to Stay [271].

**BACKGROUND**

Cerence is a multinational software company that sells voice-and-speech-recognition technology for use in vehicles. (Dkt. 63 ¶ 1). Cerence's "voice assistant" can receive, understand, and carry out voice commands made by drivers. (*Id.* ¶¶ 24-25). Plaintiffs, purchasers of vehicles equipped with Cerence's technology, initially filed this action in the Circuit Court of Cook County, Illinois. (Ex. A, Dkt. 4-1). They allege, on behalf of themselves and a proposed class of similarly situated individuals, that Cerence violated, and continues to violate, several provisions of BIPA by

1

providing its technology for integration into vehicles owned and operated in Illinois. (Dkt. 63); (Ex. A, Dkt. 271-1).

BIPA regulates how companies collect, store, disseminate, and destroy customers' biometric information. 740 ILCS 14/15. In the Original Complaint filed in Illinois state court, Plaintiffs brought four claims against Cerence. (Ex. A, Dkt. 4-1). In Count I, Plaintiffs alleged a violation of Section 15(a) for failing "to make publicly available any policy addressing its biometric retention and destruction practices." (*Id.* ¶¶ 51-60). Count II alleged a violation of Section 15(b), claiming that Cerence captured, collected, or otherwise obtained Plaintiffs' and other class members' biometric information without obtaining their prior, informed consent. (*Id.* ¶¶ 61-71). Count III alleged a violation of Section 15(c) for profiting "directly and indirectly from the integration of [Cerence's] biometric-enabled speech recognition technology in consumers' vehicles." (*Id.* ¶¶ 72-81). In Count IV, Plaintiffs alleged a violation of Section 15(d) for disclosing their biometric information to third-party companies without their prior, informed consent. (*Id.* ¶¶ 82-92).

The case was removed to this Court in April 2023 under the Class Action Fairness Act. (Dkt. 4). In May 2023, the parties agreed to remand the Section 15(a) and 15(c) claims for lack of federal subject matter jurisdiction. (Dkt. 15). Since then, those claims have proceeded in state court, while the claims under Sections 15(b) and 15(d) have proceeded in this Court. (Dkt. 63 at 18, 20); (Dkt. 271 at 3). Plaintiffs seek the same relief in both cases, including certification of the proposed class; injunctive and equitable relief; statutory damages of $5,000 for each willful and/or reckless violation of BIPA; and statutory damages of $1,000 for each negligent violation of BIPA. (Ex. A, Dkt. 271-1 at 21); (Dkt. 63 at 21-22). The parties finished merits discovery in this case on October 24, 2025. (Dkt. 172 at 4). Subsequently, Plaintiffs sought an extension of their expert

discovery schedule or, in the alternative, a stay. (Dkt. 170). They did not invoke the *Colorado River* doctrine. (*Id.* at 2-4). The Court extended the expert discovery deadlines without addressing the stay request. (Dkt. 174).

Following the close of discovery, Plaintiffs moved for class certification in state and federal court. (Dkt. 167); (Dkt. 271 at 4). The parties have filed other identical motions in both courts: Cerence's motions to exclude the testimony of a class notice expert; Cerence's summary judgment motions regarding Plaintiff Allan; and Plaintiffs' motions to strike a witness declaration used in support of Cerence's motion for summary judgment. (Dkts. 194, 196, 222); (Dkt. 271 at 4). Magistrate Judge David Weisman denied Plaintiffs' motion to strike the witness declaration in this case, (Dkt. 259), and Plaintiffs' objections to that Order are pending before this Court. (Dkt. 273). The state court denied Cerence's motion to exclude the class notice expert. (Dkt. 299 at 2). Plaintiffs now seek a stay of this case under the *Colorado River* doctrine pending the resolution of the state court proceedings. (Dkt. 271).

## DISCUSSION

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Abstention from exercising this jurisdiction "is the exception, not the rule." *Colorado River*, 424 U.S. at 813. Under the *Colorado River* doctrine, a federal court may stay or dismiss a case when there is a concurrent state court case only "in exceptional circumstances where abstention would promote wise judicial administration." *Antosh v. Vill. of Mount Pleasant*, 99 F.4th 989, 993 (7th Cir. 2024) (quoting *Colorado River*, 424 U.S. at 818). The Supreme Court articulated this doctrine with several principles in mind, including conserving judicial resources, the desirability of avoiding duplicative litigation and the risk of conflicting rulings, and the benefits of promoting a comprehensive

3

disposition of the parties' dispute in a single judicial forum. *See Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 526 (7th Cir. 2021) (citing *Colorado River*, 424 U.S. at 818). When determining whether to abstain under any doctrine, "the task of the district court is not to find some substantial reason for the *exercise* of federal jurisdiction but instead to ascertain whether there exist. . . the clearest of justifications . . . to justify the *surrender* of that jurisdiction." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (emphasis in original) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25-26 (1983)).

In considering whether to abstain under the *Colorado River* doctrine, the Court conducts a two-part inquiry. First, it must determine whether the state and federal actions are parallel. *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020). If the proceedings are parallel, the Court must determine if abstention is proper by weighing ten non-exclusive factors. *Id.* The factors are:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (citing *Tyrer v. City of South Beloit, Ill.,* 456 F.3d 744, 754 (7th Cir. 2006)). Both prongs of the test are satisfied here, so a stay is warranted.

## I. Parallel Proceedings

Federal and state proceedings are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues." *Freed*, 756 F.3d at 1018-19 (internal citation omitted). In determining whether there is parallelism, a court should consider whether "the

suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011) (internal citation omitted). An "exact fit" between the federal and state cases is not necessary; parallelism is satisfied where there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Antosh*, 99 F.4th at 994.

Cerence effectively agreed that the state and federal cases are parallel when it moved to stay the state court action in August 2023. (Ex. E, Dkt. 288-3). In that motion, which was ultimately denied, (Ex. 2, Dkt. 283 at 101), Cerence argued that the allegations in the two cases were "largely identical" because, in both, Plaintiffs asserted BIPA violations based on their use of vehicles equipped with Cerence's technology. (Ex. E, Dkt. 288-3 ¶ 6). It further acknowledged that "[a]ll claims rest on the same facts about Plaintiffs' use of Cerence's technology" and the only "substantive difference" between the state and federal complaints are the subsections of BIPA under which the claims are brought. (*Id.* ¶ 7). Cerence takes the opposite position now that its own arguments are being used by Plaintiffs to achieve what it deems an unfavorable result: litigation in state court. Yet, Cerence cannot escape what it already conceded—that the lawsuits are sufficiently similar to warrant a stay.

Putting aside Cerence's previous admissions, an analysis of the two lawsuits shows that they are parallel. First, the parties and relief sought in both actions are the same. Second, while the issues are not identical, they are sufficiently similar. The core claim in each case is the same: that Cerence violated BIPA when it provided its technology for integration into vehicles owned and operated by Plaintiffs. (Ex. A, Dkt. 271-1 ¶ 4); (Dkt. 63 ¶4). Additionally, Plaintiffs assert the same facts in both suits regarding how Cerence's technology operates and how Cerence obtains, analyzes, disseminates, and profits from user data. (Ex. A, Dkt. 271-1 ¶¶ 21-42); (Dkt. 63 ¶¶ 22-

5

43). The factual allegations "largely overlap, and the issues will be resolved largely by referencing the same facts and evidence," which is enough to establish parallelism. *Freed*, 756 F.3d at 1020.

Cerence argues that, despite these similarities, the actions are not parallel because they arise under different BIPA provisions. (Dkt. 283 at 8). Yet, the "key inquiry" in a parallelism analysis is "not whether the alignment of the claims and remedies in the two cases is the same, but rather whether the central legal issues remain the same in both cases." *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 649 (7th Cir. 2021) (internal citation omitted); *see also Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004) (lawsuits are parallel where they "rely on the same factual predicate to raise substantially similar legal issues"). Put differently, if the state court will "necessarily and conclusively" resolve a core issue in both cases, then the actions are substantially similar. *See Loughran*, 2 F.4th at 648 (cases were parallel where the state foreclosure court would have to determine whether the defendant was the holder of the plaintiff's note, which was the central issue in the federal case).

As Cerence notes, the contested issue underlying both lawsuits is whether the "voiceprint" data Cerence collects is considered biometric information such that its conduct is subject to BIPA. (Dkt. 283 at 8); (Ex. A, Dkt. 271-1 ¶¶ 3, 68, 77); (Dkt. 63 ¶¶ 3, 68, 79). The state court will necessarily and conclusively answer these questions in adjudicating the Section 15(a) and 15(d) claims, since liability under any BIPA provision requires showing that the defendant's data constitutes "biometric information" as defined under the statute. *See Tapia-Rendon v. Workeasy Software, LLC*, 2025 WL 2299592, at *5 (N.D. Ill. Aug. 8, 2025). If the state court determines that Cerence is not subject to BIPA, collateral estoppel will bar Plaintiffs from relitigating that issue of fact in this Court. *See, e.g., Freed v. Friedman,* 215 F. Supp. 3d 642, 650 (N.D. Ill. 2016) (noting that, if plaintiff loses in state court, defensive collateral estoppel under Illinois law would provide

defendant an "immediate victory" in federal court). As such, Plaintiffs' federal lawsuit would be resolved, which is the critical question in the parallelism analysis. *See McCurry v. OSI Industries, LLC*, 2026 WL 879698, at *2 (N.D. Ill. Mar. 30, 2026 ("Where a plaintiff's federal lawsuit relies significantly on the resolution of the primary legal issue under consideration in the state court action, the cases are sufficiently parallel to support *Colorado River* abstention.") (internal citation omitted); *Hollister Inc. v. Sugrue*, 2025 WL 1282735, at *4 (N.D. Ill. May 2, 2025) (holding that the "lack of symmetry on the relevant law" in state and federal suits did not preclude finding of parallelism where plaintiff's loss in state court on key factual issue would resolve federal case through collateral estoppel).

It is true that the state court may conclude that Cerence's data constitutes biometric information, which would not have the same preclusive effect on the federal claims. The Seventh Circuit has noted, however, that "this one-sidedness is neither unusual nor fatal to a finding that the two cases are parallel" when federal and state claims are interdependent and based on the same central facts. *Loughran*, 2 F.4th at 649 (citing *Freed*, 756 F.3d at 1021 and *Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 696 (7th Cir. 1985)). That reasoning applies here: what Cerence did to collect, use, and distribute voiceprint data (the state issue) is inherently tied to how Cerence did or did not profit from that conduct and whether it acted in accordance with any policies (the federal issues). As such, any decision by the state court in Plaintiffs' favor on the predicate issue discussed above will still "narrow the [remaining] issues and resolve most, if not all, of the factual questions on which [Plaintiffs'] claims are premised." *Nieves v. Bank of Am., N.A.*, 2015 WL 753977, at *4 (N.D. Ill. Feb. 20, 2015); *see also Hollister Inc.*, 2025 WL 12827375, at *4 ("And even if [Plaintiff] is successful in the state suit, *res judicata* and Illinois rules against claim splitting could obviate the need for further federal proceedings.").

Cerence points to cases where courts denied motions to stay under the *Colorado River* doctrine because the federal and state actions involved different claims. (Dkt. 283 at 9). In most of these cases,[1] the courts found that not only were the claims in the lawsuits different, but the issues presented and relief sought were so dissimilar that the state actions could not dispose of any of parts of the federal actions. *See, e.g, Baz v. Patterson*, 689 F. Supp. 3d 602, 608 (N.D. Ill. 2023) (cases were not parallel where state court action did not involve any of the same questions presented in the federal case); *Eclipse Gaming Sys., LLC v. Antonucci*, 2017 WL 3071258, at *4 (N.D. Ill. July 18, 2017) (same where the state and federal actions asserted different claims, sought different relief, and had a different temporal scope); *USWAY Corp. v. Wardzala*, 2012 WL 138605, at *2 (N.D. Ill. Jan. 18, 2012) (same where state and federal lawsuits raised "entirely different legal issues based on entirely separate facts").

Here, given the overlap between the factual and legal issues, the federal and state lawsuits are substantially similar despite involving different claims. *See, e.g., Karol v. Old Second Nat'l Bank*, 2020 WL 6343088, at *2 (N.D. Ill. Oct. 29, 2020) (holding that federal and state actions were parallel despite asserting different causes of action because both matters "involve[d] extremely closely related legal and factual issues," including whether a valid contract was breached and whether the mortgagee was entitled to foreclose on the property); *Fecarotta v. Covenant Transp., Inc.*, 2023 WL 2745074, at *3 (N.D. Ill. Mar. 31, 2023) (state and federal cases asserting different causes of action were parallel where the claims in both required determining

---

[1] The other two cases Cerence relies on are not persuasive. First, in *Weston v. DB Private Wealth Mortgage, Ltd.*, the court recognized that if the state court found the mortgage at issue valid and enforceable, some of the federal claims would fail. 2023 WL 4864995, at *4 (N.D. Ill. Jul. 31, 2023). Yet, it held that the state and federal actions were not parallel because the federal claims would survive if the state court reached the opposite conclusion. *Id.* As discussed above, the Seventh Circuit expressly held that this type of situation does not preclude a finding of parallelism. *Loughran*, 2 F.4th at 649. Second, *Fofi Hotel Co., Inc. v. Davfra Corp.* involves preclusion under 735 ILCS 5/2–619(a)(3), not the *Colorado River* doctrine. 846 F. Supp. 1345, 1346-47 (N.D. Ill. 1994).

whether commissions were properly paid); *GeLab Cosms. LLC v. Zhuhai Aobo Cosms. Co.*, 2023 WL 2333301, at *2 (N.D. Ill. Mar. 2, 2023), *aff'd*, 99 F.4th 424 (7th Cir. 2024) (federal trade secrets case was parallel to state fraud case because the actions arose from the same set of facts and the issue of ownership was "primary and fundamental" in both). Therefore, the Court finds that the actions are parallel for the purpose of *Colorado River* abstention.

## II.     The Abstention Factors

Having determined that the state and federal lawsuits are parallel, the Court must determine whether extraordinary circumstances support abstention by considering the ten non-exclusive factors described above. Courts must take "into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Clark*, 376 F.3d at 687 (citing *Colorado River*, 424 U.S. at 818-19). Importantly, "no one factor is necessarily determinative." *Id.* Courts have "discretion to apply more significant weight and analysis to those factors that are most relevant to the case at hand." *Freed*, 756 F.3d at 1021. Additionally, "[n]ot all of these considerations will be pertinent to every case, nor does this list preclude the district court from taking into account a special characteristic of the case before it." *DePuy Synthes Sales*, 953 F.3d at 477. Here, all but one factor favors abstention or is neutral.

The parties agree that factors one (jurisdiction over property) and two (convenience of the federal forum) are irrelevant or neutral. (Dkt. 271 at 6); (Dkt. 283 at 14). There is no property at issue in this case, and there is no difference in the relative convenience of the fora because both courthouses are in downtown Chicago. The seventh factor (the relative progress of both proceedings) is also neutral because the state and federal proceedings are at nearly the same points. Neither court has ruled on Plaintiffs' motions for summary judgment or class certification. Additionally, each court has ruled on one of the parties' discovery motions, albeit not the same

9

one. While Plaintiffs' motion to exclude a witness declaration is not fully resolved in this Court due to Plaintiffs' objections to the Magistrate Judge's ruling, that does not push this factor one way or the other.

Factor three, the desirability of avoiding piecemeal litigation, weighs heavily in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Tyrer*, 456 F.3d at 755. As discussed above, whether Cerence's data constitutes biometric information under BIPA is at the heart of the federal and state claims. Further, the factual allegations underlying the consent, policy, and profit claims are interdependent. Since there is a substantial likelihood that the state court action will likely dispose of all or most of the factual and legal issues in this case, litigating the core factual allegations in that court first would conserve judicial resources and reduce the risk of the two proceedings reaching inconsistent final judgments. *See Fecarotta*, 2023 WL 2745074, at *4; *Freed*, 756 F.3d at 1022. This risk is made evident by the fact that the parties filed identical discovery motions in both cases, each of which has already been decided upon by one court but not the other.[2] (Dkts. 194, 222, 259); (Dkt. 271 at 4); (Dkt. 299 at 2). There are also identical pending summary judgment motions in both courts, the outcomes of which largely depend on the courts' decisions on one of the discovery motions. (Dkt. 196); (Dkt. 271 at 4). As this Court considers one set of claims and the state court the other, "there is a serious risk, given the factual overlap of the claims, of drawing inconsistent factual inferences from the same discovery record." *Rivera v. Google, Inc.*, 2021 WL 3857792, at *3 (N.D. Ill. Aug. 30, 2021) (staying federal BIPA action under *Colorado River* where plaintiffs brought Section 15(b) claim in federal court and Section 15(a) and Section 15(b) claims in state court).

---

[2] Magistrate Judge David Weisman denied Plaintiff's motion to strike the witness declaration in this case, (Dkt. 259), and Plaintiffs' objections to that Order are pending before this Court. (Dkt. 273).

The pending class certification motions also increase the danger of piecemeal litigation. The court in *Rivera* faced a similar procedural issue: parties litigating Section 15(a) and 15(b) claims in state court and Section 15(b) claims in federal court filed nearly identical class certification motions in both cases. 2021 WL 3857792, at *3. The court noted the "enormous inefficiencies and costs" that would occur should the court not abstain, including discovery schedules and orders that would impact the other court, the risk of inconsistent factual findings, and the potential for confusion if class members received two sets of notices. *Id.* As that court recognized, these problems would be worse if, as here, the federal court presided over the informed-consent claims while the state court presided over only the retention-policy claims. *Id.* Accordingly, abstaining would prevent the parties from simultaneously litigating mirror issues in state and federal court and promote judicial economy, as *Colorado River* intended. *See Colorado River*, 424 U.S. at 817.

The fourth factor, the order in which jurisdiction was obtained, is more neutral but still favors abstention. Plaintiffs filed suit in state court on March 24, 2023. (Dkt. 4 at 1). Cerence removed the case to this Court 30 days later, and the Section 15(a) and 15(c) claims were remanded shortly after. (Dkts. 4, 16). Typically, the fourth factor supports abstention when a state court case is initiated before a federal case *See, e.g., Spiegel v. Kim*, 2017 WL 11596578, at *4 (N.D. Ill. Aug. 2, 2017). While a 30-day gap is not significant, it is enough to push this factor slightly towards abstention given that the overall balance favors a stay. *See Fecarotta*, 2023 WL 2745074, at *4-5 (fourth factor favored abstention where federal lawsuit was filed two months after the state lawsuit); *Clark*, 376 F.3d at 688 (holding that, where the state action was filed a few weeks before the federal action, the fourth factor was "[a]t best" neutral, but did not "push [the Court] towards allowing the federal case to proceed"); *Wildberry Condo. Ass'n v. Travelers Indem. Co. of Am.*,

522 F. Supp. 3d 432, 443 (N.D. Ill. 2021) (recognizing that the order of filing "matters somewhat" and holding that the fourth factor did not favor abstention where federal case was filed first and "the deck [was] stacked in favor of keeping the case in federal court").

The fifth, sixth, eighth, and ninth factors also favor abstention. Factor five, the source of governing law, weighs toward abstention because BIPA is an Illinois state law. *See Freed,* 756 F.3d at 1022 (recognizing that "a state court's expertise in applying its own law favors a *Colorado River* stay") (internal citation omitted); *Avila v. JDD Inv. Co.*, 2021 WL 5905627, at *7 (N.D. Ill. Dec. 13, 2021) (holding that the fifth factor favored abstention in BIPA lawsuit); *Stinson v. LCS Cmty. Emp. LLC*, 2021 WL 4978450, at *2 (N.D. Ill. May 3, 2021) (same). The sixth factor also favors abstention because the state court can adequately protect Plaintiffs' federal rights. Since the questions of law and fact in the lawsuits are substantially similar and the state court can resolve those questions just as effectively, there is "no fear that [Plaintiffs'] rights will not be adequately protected in the state proceeding." *Clark*, 376 F.3d at 688; *see also DePuy Synthes Sales*, Inc., 953 F.3d at 479 (The state courts are co-equal partners with the federal courts when it comes to protecting federal rights."). Additionally, because the Court is staying this case rather than dismissing it, Plaintiffs can revive their federal case should any issues survive the resolution the state action. *See Loughran*, 2 F.4th at 650.

The eighth and ninth factors ask about the presence or absence of concurrent jurisdiction and the availability of removal, respectively. All of Plaintiffs' BIPA claims can be heard in state court. *See Avila*, 2021 WL 5905627, at *7 (state courts have concurrent jurisdiction over BIPA claims). Conversely, there is no federal jurisdiction over the Section 15(a) and 15(c) claims, so those claims cannot be removed to federal court. *See Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 621 (7th Cir. 2020); *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1248-49 (7th Cir.

2021). Accordingly, these factors favor abstention. *See Stinson*, 2021 WL 4978450, at *2 (eighth factor favored abstention where there was no dispute that state court had concurrent jurisdiction over BIPA claims); *see also Sundquist on Behalf of Allstate Corp. v. Wilson*, 2018 WL 6327007, at *6 (N.D. Ill. Dec. 4, 2018) (holding that the ninth factor favors abstention when the state suit cannot be removed to federal court); *Freed*, 756 F.3d at 1023 (the ninth factor "intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed").

Factor ten, the vexatious or contrived nature of the federal claim, is a closer call. The factor can weigh in favor of abstention when, as here, "the claims and parties in the federal suit could have been included in the original state court proceeding." *Freed*, 756 F.3d at 1024 (internal citation omitted). Yet, courts ordinarily find a federal suit to be vexatious when the plaintiff files suit in federal court after bringing a similar case in state court. *See, e.g., Karol*, 2020 WL 6343088, at *5; *Morris v. Newrez LLC et al.*, 2026 WL 1021145, at *5 (N.D. Ill. Apr. 15, 2026). Here, in contrast, the case is in federal court because Cerence chose to remove it. Plaintiffs argue that this choice was vexatious because Cerence removed the action despite binding precedent holding that half of the claims could not be adjudicated in federal court. (Dkt. 271 at 11). While this may be true, Cerence later stipulated to remanding the Section 15(a) and 15(c) claims in recognition of the jurisdictional issue. Accordingly, this factor does not weigh towards abstention.

In sum, aside from the tenth factor, each *Colorado River* factor favors abstention or is neutral, providing the "exceptional circumstances" necessary to abstain. *Tryer*, 456 F.3d at 757.

## III.    Waiver

Both steps of the *Colorado River* test are satisfied, which would normally warrant abstention. Cerence, however, argues that Plaintiffs' Motion should be denied solely because they

13

waited too long to bring it. (Dkt. 283 at 5-6). Cerence contends that Plaintiffs waived any argument for abstention by "strategically litigating their claims in this court for nearly three years and choosing federal court to drive their (numerous) discovery disputes." (*Id.*). The same question was posed in *Kane v. Bank of Am., Nat'l Ass'n*: "[W]hen a federal court [litigant] allows a federal suit to proceed for over three years before bringing a *Colorado River* motion, does that delay preclude abstention?" 2017 WL 2243055, at \*5-6 (N.D. Ill. May 23, 2017). The court in *Kane* said no, *Id.* at \*6, and this Court agrees.

In *Kane*, the plaintiff argued that, because the *Colorado River* doctrine is jurisdictional, an abstention motion can only be brought at the beginning of a case or, at the very least, no later than the point at which the state and federal cases become parallel. *Id.* First, the court clarified that the *Colorado River* doctrine is not jurisdictional. *Id.* at \*5 (citing *Thomas-Wise v. Nat'l City Mortg. Co.,* 2015 WL 641770, at \*2 (N.D. Ill. Feb. 13, 2015)). Next, it explained that the doctrine "was established primarily to benefit courts and avoid conflict between state and federal court decisions," not for either party's benefit. *Id.* at \*6. It went on to reject the plaintiff's proposed "laches-like rule" and hold that a three-year delay in bringing a *Colorado River* motion, even if motivated in part by "litigation gamesmanship," does not preclude abstention. *Id.*

While Cerence recognizes that the *Colorado River* doctrine is non-jurisdictional, it makes essentially the same arguments as the plaintiff in *Kane*: that *Colorado River* abstention arguments can be waived by waiting too long to raise them. (Dkt. 283 at 5). Cerence does not point to any precedent that overcomes the clear rejection of this argument in *Kane*. It relies heavily on *Barichello v. McDonald*, 98 F.3d 948 (7th Cir. 1996), but its reliance is misplaced. In *Barichello*, the Seventh Circuit held that a district court may abstain *sua sponte* under the *Younger* doctrine "[i]n the absence of a showing that a state has waived abstention arguments by expressly urging

14

the federal court to address the merits." *Id.* at 955 (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schools,* 477 U.S. 619, 626 (1986)). The holding in *Barichello* is not controlling here because *Colorado River* abstention, not *Younger* abstention, is at issue and was raised by a party, not the Court. Moreover, even if *Barichello* applied in the *Colorado River* context,[3] Plaintiffs have not waived their abstention arguments.

The parties in *Barichello* never raised *Younger* abstention in the district court proceedings; the plaintiff only objected to it on appeal after the district court decided on its own initiative to abstain. 98 F.3d at 952, 955. After recognizing that *Younger* abstention may be waived, the Seventh Circuit proceeded with an abstention analysis, implying that declining or failing to raise abstention was not the same as expressly urging the federal court to address the merits of the case. *Id.* at 955-56. If a complete failure to raise abstention arguments in the district court does not constitute waiver, then a years-long delay likewise does not. Further, even accepting Cerence's assertion that Plaintiffs intentionally pursued discovery disputes in this Court rather than in state court, such conduct does not amount to the type of waiver discussed in *Barichello*. *See Dayton*, 477 U.S. at 626 (collecting Supreme Court cases where *Younger* abstention was waived by the state consenting to federal jurisdiction or by both parties requesting that the federal court reach the merits of the issue).

Given the guidance in *Kane* and the lack of controlling precedent holding otherwise, the Court declines to hold that *Colorado River* abstention can be waived by a party's delay in raising

---

[3] Cerence points to two cases where a court in this District interpreted *Barichello* to apply to *Colorado River* abstention and chose to rule on the parties' motions to dismiss instead of addressing their abstention arguments. *See Allian v. Allian*, 2018 WL 6591422, at *4 (N.D. Ill. Dec. 14, 2018) (Feinerman, J.); *Thomas-Wise v. Nat'l City Mortg. Co.*, 2015 WL 641770, at *2 (N.D. Ill. Feb. 13, 2015) (Feinerman, J.). This Court declines to adopt that interpretation. The other District Court cases Cerence cites are equally unpersuasive because they involved different issues than what Cerence asserts here. *See Thomas-Wise v. Nat'l City Mortg. Co.*, 2015 WL 641770, at *2 n. 3 (N.D. Ill. Feb. 13, 2015) (denying plaintiff's motion to remand and referencing the *Barichello* waiver holding in recognition that the *Colorado River* doctrine is non-jurisdictional); *Houston v. AIMCO*, 2019 WL 1077125, at *2 (N.D. Ill. Mar. 7, 2019) (holding that defendants waived their *Colorado River* abstention arguments because they did not raise it in their opening brief).

it. The Court recognizes that *Colorado River* motions are typically brought at the outset of litigation. *See, e.g., Stinson*, 2021 WL 4978450, at *1 (motion to stay filed shortly after case was removed to federal court); *E. Gate-Logistics Park Chicago, LLC v. CenterPoint Props. Tr.*, 2024 WL 4265184, at *3 (N.D. Ill. Sept. 23, 2024) (motion to stay filed several months after initiation of federal case). Yet, imposing a time requirement on raising *Colorado River* abstention goes against the Supreme Court's admonition to apply the doctrine "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Kane*, 2017 WL 2243055, at *6 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21). Further, such a rule would be redundant because courts already account for the impact of any delays through the ten-factor analysis, specifically factors three (danger of piecemeal litigation) and seven (progress of both cases). *See Kane*, 2017 WL 2243055, at *5.

By rejecting Cerence's waiver argument, the Court is not excusing Plaintiffs' tardiness in raising their abstention concerns. This case has dragged on for longer than necessary, and it is possible that Plaintiffs are seeking abstention now because they have decided, in the face of recent rulings in both courts, that state court is a more favorable forum. Regardless, such concerns are not "reason enough to disregard the guidance of precedent and forge ahead with a case that should otherwise be stayed." *Kane*, WL 2243055, at *6. The Court will not "duplicat[e] the amount of judicial resources required to reach a resolution," *Clark,* 376 F.3d at 687, just to punish Plaintiffs for what Cerence believes is improper gamesmanship.

In sum, the Court finds that Plaintiffs' state and federal actions are parallel and that there are exceptional circumstances that warrant abstention. Accordingly, this suit is stayed pending resolution of the state court proceedings, including any appeal. When the state court proceedings

conclude, any party may move this court to lift the stay and proceed with the federal suit in a manner consistent with the state court's rulings and any applicable preclusion principles.

**<u>CONCLUSION</u>**

For the reasons above, the Court grants Plaintiffs' Motion to Stay [271]. All other pending motions are stricken with leave to refile pending resolution of the state court action.

_____
Virginia M. Kendall
United States District Judge

Date: June 1, 2026